*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name:  08a0286p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LINDA WELLS BACK,

　　　　　*Plaintiff-Appellee,*

　　　*v.*

KEITH A. HALL (07-5934) and JOEL SCHRADER
(07-5935),

　　　　　*Defendants-Appellants.*

Nos. 07-5934/5935

>

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 06-00005—Joseph M. Hood, District Judge.

Argued:  July 24, 2008

Decided and Filed:  August 11, 2008

Before:  MOORE and SUTTON, Circuit Judges; ALDRICH, District Judge.[*]

---

**COUNSEL**

**ARGUED:**  Laurence J. Zielke, ZIELKE LAW FIRM, Louisville, Kentucky, William C. Hurt, Jr., HURT, CROSBIE & MAY, Lexington, Kentucky, for Appellants.  Thomas E. Clay, LAW OFFICES, Louisville, Kentucky, for Appellee. **ON BRIEF:**  Laurence J. Zielke, Nancy J. Schook, ZIELKE LAW FIRM, Louisville, Kentucky, William C. Hurt, Jr., Aaron Davis Reedy, HURT, CROSBIE & MAY, Lexington, Kentucky, for Appellants.  Thomas E. Clay, LAW OFFICES, Louisville, Kentucky, for Appellee.

---

**OPINION**

---

SUTTON, Circuit Judge.  In 2003, while a Democrat occupied the Kentucky governor's mansion, Linda Back, a registered Democrat, received a civil-service position in the Kentucky Office of Homeland Security.  In 2005, one year after a Republican administration took the reins of State government, Keith Hall and Joel Schrader, Back's supervisors, fired her.  Back sued them under 42 U.S.C. § 1983, alleging that they fired her based on protected speech and political affiliation in violation of the First (and Fourteenth) Amendment.  Before discovery commenced, the

---

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

defendants asserted qualified immunity, which the district court granted as to Back's freedom-of-speech claims but denied as to Back's political-affiliation claims. Hall and Schrader seek interlocutory review of the district court's political-affiliation decision, and we affirm.

I.

As is always the case when we review a Rule 12(b)(6) or Rule 12(c) decision, we accept the facts as the plaintiff, here Linda Back, has pleaded them. On February 16, 2003, the Kentucky Office of Homeland Security hired Back as a Grants and Contracts Administrator, a position protected by Kentucky's civil-service statute. Beginning in December 2003, during the State's transition from a Democratic to a Republican administration, there was considerable turnover within the Office. As "the only [civil-service] system employee of the office throughout the gubernatorial transition period," Back was given "an increasing level of administrative responsibility." JA 17. Under the guidance of the newly appointed Executive Director, Erwin Roberts, Back trained new employees and maintained responsibility for processing and administering the agency's federal homeland-security grant applications. Through the ensuing spring and summer, Roberts noticed the increased responsibility Back had undertaken and talked to her about "upgrading her position." JA 20.

Despite Back's good relationship with Roberts, tensions developed between Back and other Republican-appointed supervisors. On April 16, 2004, Joel Schrader became the Deputy Director of the Office, and, according to Back, he "repeatedly invoked partisan political considerations in the process of awarding Federal Homeland Security grants, and in the hiring of personnel." JA 18. He once told Back that "certain local governments would not receive funding because local officials were Democrats." JA 19. Back says that she repeatedly "voiced her concerns" about Schrader's partisan maneuvering, JA 19–20, and that he retaliated by "substantially exclud[ing]" her from the process of interviewing prospective employees, JA 20.

When Roberts decided to give Back a promotion, he suggested she take a Principal Assistant position, but Back responded that she did not want to accept a non-civil-service—a political—job. Roberts then offered Back a civil-service position as a Branch Manager, but he soon changed his mind because that position "required direct involvement with Deputy Director Schrader," and he told Back, "trust me, you don't want" that position. JA 21. Roberts eventually appointed Back to another civil-service position, that of Internal Policy Analyst III, and on September 1, 2004, Back resigned from her old position in order to start her new one. Even after this change, Back continued to clash with Schrader over his administration of federal grants.

Unfortunately for Back, Roberts left the agency in October 2004, and Keith Hall, a former lobbyist, eventually replaced him as Executive Director. On the afternoon of January 19, 2005, Schrader and Hall met with Back and handed her a letter terminating her employment.

On January 17, 2006, Back filed this lawsuit in the Eastern District of Kentucky against Hall, Schrader, Alecia Webb-Edgington (Kentucky's Director of Homeland Security) and the Commonwealth of Kentucky, alleging that Hall and Schrader violated her First Amendment and state-law rights by terminating her "by reason of her political affiliation as a Democrat" and "in retaliation for her" vocal complaints of Schrader's "use of partisan political considerations." JA 23.

The district court dismissed Back's suit against the Commonwealth and against Webb-Edgington and dismissed Back's state-law claims because she had failed to exhaust her administrative remedies. At the same time, the court denied Hall's and Schrader's motions to dismiss Back's First Amendment claims. After the judge who was initially assigned the case recused herself, Hall filed a motion to reconsider, and Schrader filed a motion for judgment on the pleadings based on *Garcetti v. Ceballos*, 547 U.S. 410 (2006). Relying on *Garcetti*, the district court

dismissed Back's freedom-of-speech claims, holding that Back's complaints "were made pursuant to the duties of her position" and were "therefore unprotected as a matter of law." JA 31. But the court denied the defendants' request for qualified immunity on Back's political-affiliation claims, holding that Back had adequately alleged a clearly established constitutional violation. The defendants appealed.

II.

Interlocutory appeals normally fall outside our reach, but because Hall and Schrader seek review of "an order rejecting the defense of qualified immunity," that denial is "a 'final' judgment subject to immediate appeal." *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996). That we give expedited review to qualified-immunity claims, however, does not mean that we give more exacting review to those claims. Just as we gauge other pleading-stage dismissals to determine only whether the complaint states a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), so we review an assertion of qualified immunity to determine only whether the complaint "adequately alleges the commission of acts that violated clearly established law," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002). The Federal Rules of Civil Procedure require pleadings to set forth "a short and plain statement showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and nothing about the defense of qualified immunity alters this modest pleading requirement, *see Goad v. Mitchell*, 297 F.3d 497, 503 (6th Cir. 2002).

Measured by this yardstick, Back's political-affiliation allegations suffice, and neither Hall nor Schrader is entitled to qualified immunity at this early stage of the case. Taking the complaint's allegations at their word, we look to whether any constitutional right was violated and to whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001). Back alleges that she was a civil-service employee and that her supervisors fired her "because of" and "by reason of" her political affiliation as a Democrat." JA 23. These allegations clear both of *Saucier*'s hurdles: They adequately plead a constitutional violation—one that has been clearly established for some time.

As to the first hurdle, current and aspiring public employees have the First Amendment right to be free from hiring and firing practices based on political affiliation unless "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518 (1980); *see also Elrod v. Burns*, 427 U.S. 347, 355 (1976) (plurality opinion); *id.* at 375 (Stewart, J., concurring); *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 79 (1990) (holding that *Elrod* and *Branti* apply to government promotion and hiring practices as well as to firing practices). To determine whether occupants of (or applicants for) a particular office are protected from political retaliation under *Branti*, we "examine the inherent duties of that position," *Cope v. Heltsley*, 128 F.3d 452, 460 (6th Cir. 1997) (internal quotation marks omitted), and positions that exercise "no discretion of political significance" are generally entitled to First Amendment protection, *McCloud v. Testa*, 97 F.3d 1536, 1559 (6th Cir. 1996).

So far as this complaint is concerned, Back's former position falls within the category of offices for which political affiliation is irrelevant. According to the complaint, Back set up the process for evaluating grant applications, performed other administrative tasks and assisted the grant- review committee. The Kentucky legislature also seems to believe that political affiliation is not relevant to those duties: Back's position was classified under Kentucky's civil-service statute, *see* Ky. Rev. Stat. Ann. § 18A.115 (exempting certain state employment offices, though not Back's position, from coverage), and Kentucky law says that "[n]o person shall be appointed or promoted to, or demoted or dismissed from" such classified positions based on "political . . . affiliations," *id.* § 18A.140(1). We have long given presumptive deference to a state legislature's determination that a position "should be classified as . . . nonpolitical," *Rice v. Ohio Dep't of Transp.*, 14 F.3d 1133,

1143 (6th Cir. 1994), and, at least at this stage of the proceedings, the administrators have given us no reason to second guess that body's judgment. Nor has Hall or Schrader identified any component of Back's job description for which political ideology bears on "the effective performance of [her] office." *Branti*, 445 U.S. at 518. Back's complaint, in short, alleges a cognizable First Amendment claim.

As to the second hurdle, Back's right to be free from termination based on her political affiliation was "clearly established . . . in a particularized sense" such that no "reasonable official in the [administrators'] position could have believed [such] conduct was lawful." *Cope*, 128 F.3d at 458–59 (internal quotation marks omitted). As of the date of Back's termination, Sixth Circuit precedent established at the least that an administrative employee like Back, who "simply perform[s] functions over which he or she has no discretion, or no discretion of political significance," is entitled to First Amendment protection. *McCloud*, 97 F.3d at 1559 (affirming the denial of qualified immunity regarding the firing of various mid-level administrators); *see also Caudill v. Hollan*, 431 F.3d 900, 909–10 (6th Cir. 2005) (holding that deputy clerks who perform "essentially clerical" tasks were protected). Back has therefore met her pleading-stage burden and "allege[d] the commission of acts that violated clearly established law." *Mitchell*, 472 U.S. at 526.

The defendants' attempt to muddy these waters is not persuasive. They argue that any constitutional protection Back enjoyed could not have been clearly established because, as in *Cope*, "there was no published decision . . . holding that political compatibility is not . . . an appropriate requirement for [her former] position." 128 F.3d at 460 (internal quotation marks omitted). In one sense, they are right. Neither we nor the Supreme Court has ever held that the Internal Policy Analyst III job in the Kentucky Office of Homeland Security is a nonpolitical job.

But in a more fundamental way, they are wrong. The absence of such a precise holding does not prevent the relevant law from being clearly established, even in the particularized sense that our case law requires. We have previously rejected "the notion that there must be a separate patronage dismissal decision . . . involving a particular position before qualified immunity can be denied." *McCloud*, 97 F.3d at 1556.

Nor is *Cope* to the contrary. It dealt with deputy county clerks who *were not protected* by the civil service system, *see* 128 F.3d at 460, and therefore a precise holding was needed to rebut the presumption that unclassified positions fall within the *Branti* exception for political positions, *see id.* at 459; *see also McCloud*, 97 F.3d at 1542 (interpreting *Rice* to mean that the *Branti* exception "is to be construed broadly, so as presumptively to encompass positions placed by the legislature outside of the 'merit' civil service").

In fighting this distinction, the supervisors point to Back's probationary status, *see* Ky. Rev. Stat. Ann. § 18A.111, and to the fact that the Kentucky Supreme Court once said (in dicta and not in the context of a First Amendment case) that probationary employees could be fired "for any reason, political or otherwise," *Miracle v. Gable*, 452 S.W.2d 399, 400 (Ky. 1970). A reasonable officer, they claim, could thus believe that Back was not protected from a patronage dismissal. But *Miracle* did not interpret the civil-service statute governing Back's employment (it interpreted a no-longer-governing Personnel Department Rule), *see id.*, and the current statute protects even probationary employees from discrimination on the basis of political affiliation, *see* Ky. Rev. Stat. Ann. § 18A.111(1) (allowing probationary employees to appeal "as provided by KRS 18A.095"); *id.* § 18A.095(15)(a) (allowing administrative appeals based on "discriminat[ion]"); *id.* § 18A.140(1) (prohibiting political discrimination). The *Branti* exception, moreover, turns on whether a particular "*position*" may be deemed political, 445 U.S. at 518 (emphasis added), which we determine by looking to its "inherent duties," *Cope*, 128 F.3d at 460, not to the employee's tenure in that job or to her right to that job's continued existence, *cf. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977) ("Even though [a non-tenured teacher] could have been discharged for

no reason . . . he may nonetheless establish a claim to reinstatement if the decision . . . was made by reason of his exercise of constitutionally protected First Amendment freedoms."). It may well be that a probationary employee, like an at-will employee, may be fired for no reason or most any reason; she just cannot be fired for "an unconstitutional reason." *See Morris v. Crow*, 142 F.3d 1379, 1381 (11th Cir. 1998).

Hall and Schrader separately argue that Back has failed to establish a prima facie case of political-affiliation dismissal. Were this appeal before us in the context of the denial of a summary judgment motion, we might entertain their argument. But it is not. Because we are at the pleading stage of this case, and because there is no "heightened pleading requirement . . . for civil rights plaintiffs in cases in which the defendant raises the affirmative defense of qualified immunity," *Goad*, 297 F.3d at 503; *see also Crawford-El v. Britton*, 523 U.S. 574, 589 (1998), Back was not required to plead her prima facie case, *cf. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (holding in a Title VII case that "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply" when there is "direct evidence of discrimination"). It sufficed to allege that she was fired because of her political affiliation in violation of the First Amendment.

Hall and Schrader protest that Back's allegation that she was terminated "because of her political affiliation," JA 23, is conclusory. But as the Supreme Court has recently made clear, the conclusory nature of particular allegations cannot alone justify dismissing a complaint. *See Erickson v. Pardus*, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007). Eventually, Back will need to establish *with evidence* that her Democratic affiliation was a "substantial" or "motivating" factor in each administrator's decision to terminate her. *Mt. Healthy*, 429 U.S. at 287; *see also Conklin v. Lovely*, 834 F.2d 543, 546–47 (6th Cir. 1987) (applying *Mt. Healthy*'s "substantial" or "motivating" factor test to patronage dismissal claims). And if she meets that burden, then the defendants will need to show that they would have fired her anyway, even if she were a Republican. *Mt. Healthy*, 429 U.S. at 287. But for now, at the pleading stage, it suffices that Back alleged that she "was terminated by defendants Hall and Schrader by reason of her political affiliation as a Democrat." JA 23.

III.

For these reasons, we affirm.