NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0363n.06

No. 10-1406

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| | | **FILED** |
| FAITH BAPTIST CHURCH, et al., | ) | *Apr 11, 2013* |
| | ) | DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| WATERFORD TOWNSHIP, et al., | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE:     MERRITT and MOORE, Circuit Judges; and MAYS, District Judge.[*]

**Mays, District Judge**.  Plaintiffs Faith Baptist Church and Pastor James Combs appeal the judgment of the district court denying their claims against Waterford Township, Carl Solden, individually and in his official capacity as Waterford Township Supervisor, Daniel T. McCaw, individually and in his official capacity as Chief of the Waterford Township Police Department, Jeffrey James, individually and in his official capacity as Deputy Chief of the Waterford Township Police Department, and Walter Bedell, individually and in his official capacity as Prosecuting Attorney for Waterford Township.[1]  Plaintiffs seek relief under 42 U.S.C. § 1983 for Defendants'

---

[*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

[1]In the district court, the initial plaintiffs included Martin Woody, Jeffrey Johnson, Andrew Olafsson, and two minors, K.H. and E.H.  Their claims were dismissed without prejudice below, and they are not parties to this appeal.

violation of Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments.[2] They pray for monetary damages, injunctive relief, and a declaration that Defendants' actions are unconstitutional.

This case arose when residents in Waterford complained to the Waterford Police Department that the music at Faith Baptist Church was too loud. Officers responded and questioned several worshipers and pastors at the church about the volume of the music. Bedell threatened to prosecute church members for disturbing the peace. No charges were ever filed.

On March 10, 2008, Plaintiffs filed suit. The relevant allegations for purposes of this appeal are that Defendants: 1) violated Plaintiffs' First Amendment right to free exercise of religion; 2) violated their First Amendment right to freedom of speech; 3) violated their First Amendment right to freedom of association; 4) conspired to deprive Plaintiffs of their First Amendment rights; 5) violated their Fourth Amendment rights; 6) conspired to deprive Plaintiffs of their Fourth Amendment rights; and 7) violated Plaintiffs' right to Equal Protection under the Fourteenth Amendment.

The district court granted partial judgment on the pleadings, dismissing Plaintiffs' claims of conspiracy to violate their First and Fourth Amendment rights and violation of their equal protection rights under the Fourteenth Amendment, and all claims against Bedell on qualified immunity grounds.[3] On summary judgment, the district court dismissed all of Plaintiffs' First Amendment

---

[2]The district court declined to exercise jurisdiction over Plaintiffs' claims for violation of the Michigan constitution. Plaintiffs do not appeal that decision.

[3]Defendants asserted qualified immunity on behalf of Bedell only ; the district court never decided, and neither party addresses, whether Solden, McCaw, or James is entitled to qualified immunity.

claims for lack of standing. The district court also concluded that Waterford police officers did not violate the Fourth Amendment when they questioned church members or when they entered the church.

For the following reasons, we AFFIRM in part and REVERSE in part the district court's judgment.

**I.**

Faith Baptist Church is a non-denominational church in Waterford, Michigan. On Wednesday evenings, it holds youth services where Christian musicians play contemporary religious music. On or about September 11, 2007, Timothy Carlson, a neighbor, complained to the Waterford Township Police Department about loud music at the church. Carlson had lived across the street since 2004. He said he had complained in 2006, but the church was unresponsive. On September 26, 2007, police officers were dispatched to Carlson's home after he complained that the church was disturbing the peace. Because no music was playing when the officers arrived, they did not visit the church. On October 7, 2007, Carlson complained again. When the officers arrived, the music was so loud they could hear it in Carlson's home. The officers went to the church and spoke with Pastor Mark Kerr, who said the band in the auditorium was practicing for the evening service. Kerr said the officers "talked for a bit . . . and they asked to see my driver's license." The police did not tell Kerr or the musicians that they had to turn the music down.

On October 10, 2007, the police were called to Faith Baptist Church again. No music was playing when they arrived. Bedell, in his capacity as Waterford's Prosecuting Attorney, had arrived before them, and found the noise excessive. When he arrived, the music was so loud that the

windows at Carlson's residence were rattling, and Bedell could not use a normal speaking tone. Before leaving the church, Bedell advised Combs, the youth pastor, that Bedell would obtain misdemeanor warrants for the members of the band. Bedell also dropped off copies of twelve noise complaints about the church's music. Bedell had been in the church on unrelated matters twelve to fifteen times before, and no one had told him he was unwelcome.

On October 11, 2007, Bedell spoke with Pastor Martin Woody about the noise complaint. Bedell told Woody "the church should not be playing rock music," and Bedell "[was] going to continue to issue tickets until it's stopped." On October 15, 2007, Bedell sent letters to three members of the band notifying them that the prosecutor's office had received complaints against them and that they had to make an appointment with Bedell to discuss the complaints. Bedell took no further action, and no one was charged with a misdemeanor.

On October 28, 2007, police officers were again dispatched to Carlson's home because of a noise complaint. When the officers arrived, the music coming from the church had already stopped. The officers went to the church, identified the band members, and left. The officers did not order the band to stop playing, and the band members did not receive tickets. An unidentified church member videotaped the police. The police did not visit Faith Baptist Church again.

## II.

The issues on appeal were decided in two separate orders: a judgment on the pleadings and a summary judgment. Although the district court decided the question of qualified immunity in its judgment on the pleadings, we address qualified immunity separately.

"Qualified immunity is a question of law...to be reviewed *de novo* by this Court." *Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 346 (6th Cir. 2001); *see also Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2010). A court need not accept unwarranted factual inferences as true. *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). When considering qualified immunity on appeal from a motion to dismiss, the court must "treat[ ] all allegations in the complaint as true and draw[ ] all inferences in favor of the non-moving party." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012). The court "'review[s] an assertion of qualified immunity to determine only whether the complaint adequately alleges the commission of acts that violated clearly established law.'" *Heyne v. Metro. Nashville Pub. Schools*, 655 F.3d 556, 562 (6th Cir. 2011) (quoting *Back v. Hall*, 537 F.3d 552, 555 (6th Cir. 2008) (internal quotations omitted)). The test on appeal is "whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Id.* at 562-63. If the court determines that the conduct of a government official violated a statutory or constitutional right of a plaintiff, the court must decide "whether the right was clearly established in light of the specific context of the case." *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007) (internal quotation marks and citation omitted). A right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Binay v. Bettendorf*, 601 F.3d 640, 651 (6th Cir. 2010) (internal quotation marks omitted).

This Court reviews a district court's grant of judgment on the pleadings under Fed. R. Civ. P. 12(c) de novo. *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). The manner of review is the same as a motion under Fed. R. Civ. P. 12(b)(6). *Id.*; *see also Smith v. City of Salem*,

378 F.3d 566, 570 (6th Cir. 2004). The court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle [it to] relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *see also JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (internal quotation marks omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

This Court reviews a district court's grant of summary judgment de novo. *See Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006). The evidence and the reasonable inferences therefrom are considered in the light most favorable to the non-moving party. *Binay*, 601 F.3d at 646; *Evans v. Vinson*, 427 F. App'x 437, 441 (6th Cir. 2011). This Court "must view the evidence in the light most favorable to Plaintiffs to determine whether a genuine issue of material fact exists." *Binay*, 601 F.3d at 646. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). When considering First Amendment claims on summary judgment, appellate courts must "conduct an independent examination of the whole record so as to assure [] that this judgment does not constitute a forbidden intrusion on the field of

free expression." *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S.

557, 567-68 (1995) (internal quotation marks and alteration omitted); *see also United Food &*

*Commer. Workers Union, Local 1099 v. Southwest Ohio Regional Transit Auth.*, 163 F.3d 341, 357

(6th Cir. 1998) (recognizing duty to engage in independent examination of the record in First

Amendment cases).

## III.

### A.

In their Motion for Judgment on the Pleadings, Defendants moved to dismiss Bedell on the

ground of qualified immunity. Qualified immunity is an affirmative defense that government

officials may raise to shield themselves from liability for civil damages when their conduct does not

violate clearly established statutory or constitutional rights. *Flint*, 270 F.3d at 346-47. Defendants

did not move to dismiss any other Township official on the ground of qualified immunity. The

district court concluded that Bedell was not entitled to absolute prosecutorial immunity but was

entitled to qualified immunity and dismissed all claims against him.

Plaintiffs challenge the district court's conclusion that Bedell was entitled to qualified

immunity from monetary, injunctive, and declaratory relief in his individual capacity [4] and its

---

[4]Defendants moved only to dismiss Bedell on the ground of qualified immunity. They did not move to dismiss Plaintiffs' claims for violation of the Fourth Amendment. The district court decided Plaintiffs' Fourth Amendment claims against the other defendants on summary judgment using the summary judgment standard and the more developed record available at that stage of the case.

dismissal of the suit against Bedell in his official capacity.[5]  Defendants contend on appeal that Bedell was entitled to absolute immunity because he was a prosecutor and his investigation was in preparation for the initiation of a prosecution.  They contend, in the alternative, that Bedell was entitled to qualified immunity because his actions did not violate any clearly established statutory or constitutional right.

The district court's denial of absolute immunity was proper.  The Supreme Court has decided that "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect one and not the other.'"  *Id.* (*quoting Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973)).  Here, Bedell was conducting the sort of preliminary investigation routinely performed by law enforcement officers.  As the district court concluded, he was not entitled to absolute immunity.

Plaintiffs' objection to the district court's ruling on Bedell's qualified immunity in his official capacity is a pure question of law.  Plaintiffs' claim that the district court improperly applied the controlling law in a manner independent of the facts of the case is sufficient to bring this question before us.  *Cf. United States v. Kelso*, 468 F. App'x 551, 556-57 (6th Cir. 2012).  Plaintiffs' suit

---

[5]The district court dismissed Bedell from the suit entirely without addressing the suit against Bedell in his official capacity and did not discuss Plaintiffs' request for declaratory or injunctive relief.  (J. On Pleadings 7.)

names Bedell and the other individual Defendants in both their individual and official capacities. Qualified immunity protects officials from monetary damages in their individual capacities only and cannot be the basis for dismissal of an official capacity suit. *See Garcia v. Dykstra*, 260 F. App'x 887, 895 (6th Cir. 2008). However, we "may affirm on any grounds supported by the record even if different from the reasons of the district court." *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007) (internal quotation marks omitted). Here, Plaintiffs' suit against Bedell in his official capacity was properly dismissed. "'Official-capacity suits represent only another way of pleading an action against an entity of which an officer is an agent.'" *Everson v. Leis*, 556 F.3d 484, 493-94 n.3 (6th Cir. 2009) (*quoting Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) (alterations omitted)). "An official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Briner v. City of Ontario*, 370 F. App'x 682, 699 (6th Cir. 2010) (internal quotation marks and alterations omitted). Having sued Waterford Township, the entity for which Bedell was an agent, the suit against Bedell in his official capacity was superfluous.

Plaintiffs' objection to the district court's ruling on Bedell's qualified immunity for injunctive and declaratory relief is a pure question of law. Plaintiffs' claim that the district court improperly applied the controlling law in a manner independent of the facts of the case is sufficient to bring this question before us. *Cf. Kelso*, 468 F. App'x at 556-57. The district court improperly dismissed Plaintiffs' claims for declaratory and injunctive relief against Bedell on the ground of qualified immunity. An official's qualified immunity does not preclude injunctive or declaratory relief. *See Smith v. Leis*, 407 F. App'x 918, 930 (6th Cir. 2011) ("[A] court could award both declaratory and injunctive relief in an action against a defendant protected by qualified immunity.");

*Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996) ("[I]mmunity only precludes claims for monetary damages against officials in their individual capacities, and not claims for injunctive or declaratory relief.").

Bedell's qualified immunity for damages in his individual capacity is a mixed question of law and fact. On appeal, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). A bare recitation of the legal standard and the elements necessary to meet it is insufficient to trigger review of a mixed question. *See Clanton v. Comm'r*, 491 F. App'x 610, 611 (6th Cir. 2012) (plaintiff "has waived review of nearly every argument he raises on appeal because his pleadings are entirely conclusory, lack factual specificity, and do not clearly explain the basis of his claims."). When a party in its brief on appeal "merely set[s] out the standard of review and the elements of the claim" and "[does] not argue or explain how that standard or those elements were satisfied in [the instant] case," the claim is considered waived. *Kelso*, 468 F. App'x at 556-57. Plaintiffs describe the qualified immunity standard at length, but do not present any allegations that might satisfy the standard. They offer only the conclusory statement that, "[i]n this case, it was clearly established that government officials may not abuse their authority in an effort to suppress speech that they disfavor." Appellants' Brief at 35. Because Plaintiffs have not sufficiently addressed Bedell's qualified immunity from damages in his individual capacity, that issue is deemed waived.

Plaintiffs' claims against Bedell in his offical capacity were properly dismissed because they were in actuality claims against the Township of Waterford, which is itself a defendant. Plaintiffs'

objection to the district court's dismissal of their claims for monetary damages against Bedell in his individual capacity on the ground of qualified immunity is waived. Plaintiffs' claims against Bedell in his individual capacity for injunctive and declaratory relief were improperly dismissed by the district court on the ground of qualified immunity and are remanded to the district court.

**B.**

In its judgment on the pleadings, the district court dismissed Plaintiffs' civil conspiracy claims because Defendants acted within the scope of their employment and the intra-corporate conspiracy doctrine applied. The district court also dismissed Plaintiffs' Equal Protection claim under the Fourteenth Amendment.

The district court dismissed Plaintiffs' First and Fourth Amendment conspiracy claims on the ground that the intra-corporate conspiracy doctrine applied under Michigan law and prevented Defendants, as members of a single corporate entity, from conspiring with one another. We need not address the application of the intra-corporate conspiracy doctrine. We may affirm the district court's determination on any ground supported by the record. *Dixon*, 492 F.3d at 673. Defendants moved to dismiss Plaintiffs' conspiracy claims in their Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). Plaintiffs' conspiracy claims can survive a Rule 12(c) motion only if their Complaint alleges sufficient facts, accepted as true, to state a claim of entitlement to relief that is plausible on its face. *Iqbal*, 556 U.S. at 677. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To plead a § 1983 conspiracy successfully, Plaintiffs must allege sufficient facts to state a claim that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of

their constitutional rights, and (3) an overt act was committed." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007).

Plaintiffs do not allege any facts to support their claim that Defendants engaged in a conspiracy to violate Plaintiffs' First or Fourth Amendment Rights. Plaintiffs merely make the conclusory statements that, by "acts and omissions, and policies, practices, and/or customs, engaged in under the color of state law, Defendants have conspired to unconstitutionally deprive Plaintiffs of their rights[s] ... guaranteed under the First Amendment," and "that Defendants agreed to and engaged in overt acts that did unlawfully and unreasonably threaten Plaintiffs with criminal action...because of their First Amendment activities." Compl. ¶ 47. Plaintiffs make the same bare assertions to support their Fourth Amendment conspiracy claims. Compl. ¶ 53. Plaintiffs' conclusory allegations are insufficient to state a plausible claim that Defendants conspired to deprive them of their constitutional rights in violation of 42 U.S.C. § 1983. The district court's dismissal of Plaintiffs' conspiracy claims is affirmed.

Plaintiffs also allege that they were discriminated against because their religious beliefs were treated on "less than equal terms," and that they were targeted for "discriminatory and arbitrary enforcement of the laws on account of Plaintiffs['] religious practices." The district court dismissed Plaintiffs' Fourteenth Amendment claim because they did not allege they were treated differently from any other religious group in Waterford.

Plaintiffs' argument can best be read as a claim that Waterford is selectively enforcing its disturbing-the-peace ordinance and that they are being singled out for playing rock music. "Selective enforcement claims are judged according to ordinary Equal Protection standards, which require a

12

petitioner to show both a discriminatory purpose and a discriminatory effect." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). Nonetheless, "[t]he threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by the government decision-makers." *Satawa v. Macomb Cnty. Road Comm'n*, 689 F.3d 506, 528 (6th Cir. 2012) (internal quotation marks omitted). Plaintiffs allege no facts that allow a reasonable inference that the ordinance was not enforced against other persons or groups in similar situations and have thus failed to state a claim.

## C.

In its summary judgment order, the district court dismissed Plaintiffs' First Amendment claims for lack of standing and concluded that there had been no Fourth Amendment violation because there was no concrete or particularized injury.

We review dismissal for lack of standing de novo because it is a question of law. *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007). On summary judgment, when First Amendment violations are at issue, this Court must "conduct an independent examination of the whole record so as to assure [] that this judgment does not constitute a forbidden intrusion on the field of free expression." *Hurley*, 515 U.S. at 567.

Standing is fundamental to determining "federal jurisdiction over a 'case' or 'controversy' as set forth in Article III of the Constitution." *Morrison v. Bd. Of Educ.*, 521 F.3d 602, 608 (6th Cir. 2008). "No principle is more fundamental to the judiciary's proper role." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (internal quotation marks omitted). "[It] is axiomatic that a litigant demonstrates

Article III standing by tracing a concrete and particularized injury to the defendant['s actions] . . . and establishing that a favorable judgment would provide redress." *Morrison*, 521 F.3d at 608.

To establish standing a plaintiff must show that 1) it has suffered an actual or imminent injury in fact that is concrete and particularized; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) the injury is redressable. *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 962 (6th Cir. 2009); *Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006). Standing is relaxed in the First Amendment context "'because of a judicial prediction or assumption that the policy's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Berner v. Delahanty*, 129 F.3d 20, 24 (1st Cir. 1997) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). If a plaintiff can "objectively establish an imminent threat that chills protected activity," that chill alone is a cognizable injury-in-fact. *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832, 834 (6th Cir. 2001).

Plaintiffs have shown they have a reasonable fear that their speech, free exercise of religion, and freedom of association will be chilled. "In dealing with the chilling effect criminal statutes have on First Amendment expression, the Supreme Court has previously noted that it is not necessary that a plaintiff first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Grendell*, 252 F.3d at 834 (internal quotation marks and alterations omitted).

Defendants contend that Plaintiffs lack standing because no members of the Faith Baptist Church were ultimately charged. That is not the test. This Court has found numerous government actions sufficient to turn "an otherwise-subjective allegation of chill" into "a proper injury-in-fact"

14

that creates standing. *Morrison*, 521 F.3d at 609. A "non-exhaustive list" includes: "the issuance of a temporary restraining order, an eight-month investigation into the activities and beliefs of the plaintiffs by Department of Housing and Urban Development officials, and numerous alleged seizures of membership lists." *Id.* (internal quotation marks and citations omitted). In this case, Defendants admit Plaintiffs were threatened with prosecution. Bedell wanted the band members and church leaders "to be on notice that there was an investigation, and that they could possibly be subject to a misdemeanor charge if the violations continued." The threat of criminal prosecution is precisely "the exercise of governmental power that is regulatory, proscriptive, or compulsory in nature" that this Court has found necessary to support an injury in fact based on chill. *ACLU v. NSA*, 493 F.3d 644, 663 (6th Cir. 2007). Waterford's actions were designed to "regulate[], proscribe[], or compel[] the plaintiffs." *Id.* Although Defendants did not actually enforce the ordinance, they credibly threatened to do so. As a result, Plaintiffs sustained a concrete and particularized injury. *See Morrison*, 521 F.3d at 609 ("[F]or purposes of standing, subjective chill requires some specific action on the part of the defendant in order for the litigant to demonstrate an injury-in-fact.").

Defendants also argue that there has been no harm because Faith Baptist Church has not shown it has changed its conduct. Defendants' argument gives them sole discretion about the future of this matter. Nothing would stop them from filing charges. A "voluntary cessation of the allegedly unlawful behavior is generally insufficient to moot a case determining the legality of that behavior." *Am. Canoe Ass'n v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 543 (6th Cir. 2004) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 189 (2000)). A defendant may not eliminate standing at will by ceasing to enforce a statute whenever it pleases.

Dismissing Plaintiffs' case would leave them in a legal penumbra, uncertain of the legality of their actions and afraid that Waterford might enforce its ordinance at any time.

The second requirement of standing is met because Plaintiffs' injury is traceable to Defendants' conduct. There is no dispute that Bedell threatened criminal prosecution. The injury "can be traced to the challenged action of the defendant." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).

The third requirement of standing is met because Plaintiffs' claim is redressable. Plaintiffs seek injunctive and declaratory relief. If Defendants were enjoined from enforcing Waterford's ordinance against Faith Baptist Church, Waterford would not be able to threaten Plaintiffs with criminal charges for playing religious music. "It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury . . . a sanction that effectively abates that conduct and prevents its reoccurrence provides a form of redress." *Laidlaw*, 528 U.S. at 185-86. Plaintiffs have standing to bring their First Amendment claims.

The district court dismissed Plaintiffs' Fourth Amendment claims on summary judgment because there was no seizure and because Plaintiffs had no reasonable expectation of privacy in Faith Baptist Church during worship services open to the public.

Plaintiffs' Fourth Amendment claims are not properly before us. Plaintiffs claim that Defendants violated their Fourth Amendment rights by detaining them and seizing their identification information. When the case was before the district court, the Plaintiffs on appeal, Faith Baptist Church and Pastor James Combs, were joined by five others, the band members and the youth pastor, who were allegedly detained by the police. Those five plaintiffs were dismissed

by stipulation and are not parties to the appeal. Combs was not present during any of the alleged violations and does not allege that his individual Fourth Amendment rights were violated. Combs is not entitled to assert the individual Fourth Amendment rights of the other members of the Church. *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) ("The Supreme Court has found that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted .... In order to qualify as a person aggrieved by an unlawful search and seizure one must have been a victim of a search or seizure, one against whom the search was directed ....") (internal quotations omitted). Faith Baptist Church does not assert that any violations of its Fourth Amendment rights occurred. All plaintiffs entitled to assert the Fourth Amendment rights at issue, and all of their claims, were dismissed without prejudice pursuant to the Stipulation and Order entered by the district court on March 25, 2009. (R. 27.)

**IV.**

The district court's decision on Plaintiffs' Fourth Amendment and Fourteenth Amendment claims and on Plaintiffs' § 1983 conspiracy claims is AFFIRMED. The district court's dismissal of Plaintiffs' suit against Bedell in his official capacity and for monetary damages in his individual capacity is AFFIRMED. The district court's dismissal of Plaintiffs' suit against Bedell in his individual capacity for injunctive and declaratory relief and of Plaintiffs' First Amendment claims based on lack of standing is REVERSED.