*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0149p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RONDIGO, L.L.C., a Michigan limited liability company; DOLORES MICHAELS, aka Nicolina A. Michaels; RENEE MICHAELS,

  *Plaintiffs-Appellees*,

No. 09-2185

*v.*

TOWNSHIP OF RICHMOND, et al.,

  *Defendants,*

and

WAYNE WHITMAN; STEVEN MAHONEY; TERESA SEIDEL; MATTHEW FLECHTER and ANNE HOKANSON, in their individual capacities,

  *Defendants-Appellants*.

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 08-10432—Gerald E. Rosen, Chief District Judge.

Argued: March 9, 2011

Decided and Filed: June 1, 2011

Before: McKEAGUE and STRANCH, Circuit Judges; MAYS, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** C. Adam Purnell, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellants. Cindy Rhodes Victor, THE VICTOR FIRM, PLLC, Troy, Michigan, for Appellees. **ON BRIEF:** C. Adam Purnell, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellants. Cindy Rhodes Victor, THE VICTOR FIRM, PLLC, Troy, Michigan, for Appellees.

---

[*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

---

**OPINION**

---

McKEAGUE, Circuit Judge.  Plaintiffs Rondigo, LLC and Dolores Michaels operate a farm in Richmond Township, Michigan.  In 2006, Richmond Township officials became concerned about composting operations at the farm.  Eventually, these concerns led to inspections and regulatory actions by State of Michigan officials and a state court action to prohibit composting at the site.  In January 2008, plaintiffs filed a 54-page, six-count complaint in federal court, asserting various state and federal claims against Richmond Township and its Supervisor, a citizens coalition, numerous individual citizens, and several state officials.  The district court granted the state officials' motion to dismiss all claims against them except the equal protection claim.  Because the ruling on the state defendants' motion to dismiss is a denial of qualified immunity on the equal protection claim, the state defendants have appealed this interlocutory ruling under the collateral order doctrine.  They contend plaintiffs' complaint does not contain sufficient fact allegations to make out a valid claim for denial of equal protection.  For the reasons that follow, we agree and therefore reverse the denial of qualified immunity to the state defendants.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Rondigo, LLC ("Rondigo") is a Michigan limited liability company which conducts business and has its principal place of business in Macomb County, just northeast of Detroit.  Rondigo is owned by plaintiff Dolores Michaels.  Since 2004, Rondigo and Dolores Michaels ("the Rondigo plaintiffs") have operated a farm on a 72-acre parcel of property on 32 Mile Road in Richmond Township.  On February 17, 2006, the Rondigo plaintiffs received confirmation from the Michigan Department of

---

[1]This factual summary is based on allegations in plaintiffs' amended complaint and exhibits referred to therein and attached to plaintiffs' original complaint, all presumed true for purposes of evaluating the district court's ruling on the state defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Agriculture ("MDA") that their operations at the Richmond Township location were determined to meet the Michigan Agriculture Environmental Assurance Program ("MAEAP") cropping system requirements, verifying their compliance with cost-effective pollution prevention practices and environmental regulations. MAEAP verification is significant in that it represents a verification, based on the applicant's disclosures, that farm operations comply with generally accepted agricultural and management practices ("GAAMPs"). Compliance with GAAMPs provides immunity under state law from suit or liability for maintaining a public or private nuisance. M.C.L. § 286.473(1).

Once this MAEAP verification was obtained, Rondigo consulted with Richmond Township Supervisor Gordon Furstenau in relation to its proposed nutrient management plan, which would include on-farm composting. Rondigo applied for and, on February 24, 2006, was granted a drain permit by the Macomb County Department of Public Works, allowing extension of a driveway on the Richmond Township property to facilitate on-farm composting. The same day, however, Rondigo also received a stop work order from Township Supervisor Furstenau.

Because the stop work order was nonspecific, Rondigo sought explanation, but did not receive satisfaction. "Clarification" came in the form of a March 7, 2006 letter from Wayne Whitman, MDA Environmental Manager, to Supervisor Furstenau, confirming that Rondigo's proposal to conduct composting activities at the Richmond Township site would necessitate updating the plan that had been submitted to MDA for MAEAP verification. Meanwhile, Richmond Township had commenced action against Rondigo in state court, seeking to enjoin further work on the driveway extension. *Twp. of Richmond v. Rondigo, LLC*, No. 06-1054-CZ (Macomb Cir. Ct.).

While this state court litigation was pending, in the Summer of 2006, state regulatory authorities began receiving citizen complaints from Richmond Township about the 32 Mile Road operation. In response to these complaints, MDA Resource Analyst Joe Kelpinsky conducted an inspection of the 32 Mile Road property on October 18, 2006. He found no non-compliance with GAAMPs, but suggested there could be a

need for a compost management plan. Subsequently, by letter dated October 30, 2006, MDA Environmental Manager Wayne Whitman advised Rondigo of the need to submit a compost operations plan, or letter of intent to develop a plan, by December 18, 2006. Another citizen complaint of odors coming from the 32 Mile Road operation was received by MDA on November 9, 2006. This led to another MDA inspection of the property on November 17, 2006, by Stephen Mahoney, who also detected no excessive odors.

On February 5, 2007, following yet another complaint-responsive site inspection on January 10, Mahoney sent a letter to Rondigo recommending certain actions. Mahoney identified the observed stockpiling of leaves at the site as being inconsistent with GAAMPs. Further, Mahoney identified three specific deficiencies in various plans submitted by Rondigo to MDA in January. The documents submitted consisted of a revised site plan, updated nutrient management plan and compost operations plan. The plans are comprehensive. The deficiencies identified by Mahoney appear to be minor and easily correctable, but they reflect concern about the high water table in the area and the potential impact of composting on groundwater.

Rondigo could not move the stockpiled leaves, however, because the temporary restraining order issued by the Macomb Circuit Court prohibited the work on the driveway that was prerequisite to moving the leaves. Nonetheless, Mahoney sent another letter to Rondigo, dated April 12, 2007 and actually mailed on April 17, requiring the leaves be removed by April 19. The letter confirmed that the revised plans received by MDA "addressed proper composting at the Rondigo facility," but showed "a seasonal high water table of less than two feet below the ground surface for nearly all of the proposed composting area identified in your Site Plan and at the current staging area where yard waste (leaves) have been placed on your property." R. 1, Complaint ex. 26. "For this reason," the letter continued, "MDA has determined that your facility does not conform to the Generally Accepted Agricultural and Management Practices (GAAMPs)." To bring the property into conformance with GAAMPs, Rondigo had to remove all yard waste from the property by April 19, or the matter would be referred to

the Michigan Department of Environmental Quality ("MDEQ") for pollution investigation. Consistent with Mahoney's letter, Rondigo also received a letter from Janice Wilford, MAEAP Program Manager, also dated April 12 and mailed on April 17, advising that the MAEAP verification would be withdrawn unless the leaves were removed by April 19.

Finding itself "between leaves and a hard place," Rondigo filed an emergency motion in the pending state court action on April 19, 2007. The state court conducted a conference in chambers and secured MDA's agreement not to take any action in relation to the 32 Mile Road property until after a ruling issued on Rondigo's pending motion to lift the temporary restraining order so that it could remove leaves from the property. On May 8, 2007, the Macomb Circuit Court issued an order temporarily lifting the restraining order for a period of fourteen days (i.e., through May 22, 2007) "to enable [Rondigo] to move the leaves and be in compliance with the proposed site plan submitted to the MDA." R. 1, Complaint ex. 32. Yet, MDA was not content to wait and see whether Rondigo actually removed the leaves by May 22. Inasmuch as the Macomb Circuit Court had issued its ruling, thus releasing MDA from its agreement to withhold action, Whitman, by letter dated May 17, 2007, advised Rondigo that the matter was being referred to MDEQ because MDA had not received confirmation that the leaves had been removed. Then, by letter dated June 8, 2007, Rondigo was advised that the MAEAP verification was being withdrawn, for the reasons set forth in Whitman's letter, until the operation was brought back into compliance with GAAMPs.

The Rondigo plaintiffs allege that these two letters fail to give notice specifically of how their operations failed to conform to GAAMPs. Yet, Whitman's letter clearly states that the 32 Mile Road farm was deemed to be out of compliance with GAAMPs because MDA had not received confirmation that yard waste, which was deemed to threaten groundwater because of the seasonal high water table in the area, had been removed. Still, even though the Rondigo plaintiffs clearly knew they had to remove the stockpiled leaves to satisfy MDA, and even though they had managed to secure an order

temporarily lifting the restraining order so they could remove the leaves, the complaint is devoid of any averment that the leaves were in fact moved.

Further, plaintiffs complain of the ensuing MDEQ inspection of the property by Tracy Kecskemeti on June 21, 2007. According to her interoffice notes, Kecskemeti found four large leaf piles on site, but she noted that the property was very dry at the time and there did not appear to be any runoff from this area to surface waters. She also noted, however, that because of the seasonal high water table, there was potential for runoff and leachate from the piles, creating a potential for discharge of pollutants into the groundwater. She noted Rondigo's counsel's acknowledgment that the revised site plan called for removal of the leaves to a different part of the property, but this corrective action had been stymied by pending litigation. Thus, Kecskemeti's notes, contained in an exhibit attached to plaintiffs' complaint, confirm that the piles of leaves, deemed not to be in conformity with GAAMPs, had not been moved during the fourteen-day period when the restraining order was lifted.

Finally, the Rondigo plaintiffs complain that MDEQ officials Teresa Seidel, Matthew Flechter and Ann Hokanson continued to harass them in various ways in late 2007. Specifically, the MDEQ officials are alleged to have conducted an inspection of the property on September 27, 2007 in relation to suspicion that, by extending the driveway or farm access road, Rondigo had improperly filled in wetlands without a permit. In addition, citing e-mail correspondence, the Rondigo plaintiffs allege that harassment even took the form of unwarranted scrutiny of Dolores Michaels' daughter, Renee Michaels, and her involvement with Systematic Recycling composting operation in Detroit.

Convinced that state and local authorities were unlawfully conspiring to prevent them from ever engaging in composting operations at the 32 Mile Road farm, the Rondigo plaintiffs commenced this action by filing a complaint in the Eastern District of Michigan on January 30, 2008. Also named as plaintiff is Dolores Michaels' daughter, Renee Michaels. Plaintiffs filed an amended complaint on February 5, 2008, asserting federal and state law claims against Richmond Township and its Supervisor,

against The Four Township Citizens' Coalition, against some twenty-eight Macomb County residents, and against two MDA employees (Whitman and Mahoney) and three MDEQ employees (Seidel, Flechter and Hokanson) in their individual capacities. The five state defendants moved the court to dismiss the complaint against them under Fed. R. Civ. P. 12(b)(6) or alternatively, grant them summary judgment under Fed. R. Civ. P. 56(b). On August 14, 2009, the district court adopted the magistrate judge's report and recommendation over objections from both sides. In accordance with the report and recommendation, the district court granted the motion to dismiss all claims against the state defendants, with the exception of the equal protection claim. The district court held that plaintiffs had adequately stated an equal protection claim to pass muster at the pleading stage.

Because their motion to dismiss was based in part on their assertion of qualified immunity, the state defendants have taken an immediate appeal from the denial of their motion to dismiss the equal protection claim. They contend the district court construed plaintiffs' equal protection claim too generously. They insist that plaintiffs have not set forth a non-speculative basis for relief and that this is just the sort of case for which qualified immunity is designed. The question of the state defendants' entitlement to qualified immunity is the only issue before the court in this appeal.

## II.  JURISDICTION

The Rondigo plaintiffs have not moved to dismiss the appeal, but they have challenged the court's jurisdiction to hear the state defendants' particular challenge to the district court's interlocutory denial of qualified immunity. They recognize that a denial of qualified immunity is immediately appealable under the collateral order doctrine even though it is a non-final order. However, they correctly argue that such an appeal is limited to pure questions of law. *See Chappell v. City of Cleveland*, 585 F.3d 901, 905-06 (6th Cir. 2009). Insofar as the state defendants argue that plaintiffs have failed to "demonstrate" or "establish" that they were subject to less favorable treatment than another who was similarly situated, defendants are said to be challenging the factual support for, rather than the legal sufficiency of, plaintiffs' equal protection claim.

The Rondigo plaintiffs' objection to the way the state defendants have framed the appeal misses the mark. The district court's decision is clearly based on the pleadings, not on the factual support for the equal protection claim. The court expressly recognized that it was premature to evaluate the factual support for the claim before plaintiffs were able to conduct discovery. If the state defendants' appeal is reasonably construed as challenging the district court's ruling on the adequacy of the pleadings to state a claim in avoidance of qualified immunity, then, clearly, immediate review is available and we have jurisdiction. *See Back v. Hall*, 537 F.3d 552, 555-56 (6th Cir. 2008) ("Just as we gauge other pleading-stage dismissals to determine only whether the complaint states a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), so we review an assertion of qualified immunity to determine only whether the complaint 'adequately alleges the commission of acts that violated clearly established law.'" (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985))). Hence, insofar as the state defendants' appeal properly targets the adequacy of plaintiffs' allegations to state a facially valid claim for denial of equal protection, a pure question of law is presented over which we do have jurisdiction.

## III. ANALYSIS

### A. Standard of Review

The district court's rejection of the state defendants' qualified immunity defense at the pleading stage, posing a question of law, is reviewed de novo. *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999). Under Rule 12(b)(6), the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). However, "a legal conclusion couched as a factual allegation" need not be accepted as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs' obligation to provide the "grounds" for their claimed entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The factual allegations must "raise the right to relief above the speculative level." *Id.* The

complaint must state a claim that is plausible on its face, i.e., the court must be able to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). If a court does consider material outside the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56 and all parties must be given a reasonable opportunity to present all material pertinent to the motion. *Id.* However, a court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to one for summary judgment. *Bassett*, 528 F.3d at 430.

## B.  Equal Protection

Although the complaint is lengthy, the factual allegations pleaded specifically in support of plaintiffs' equal protection claim under 42 U.S.C. § 1983 are minimal. Plaintiffs allege the state defendants knew Dolores Michaels is a woman and knew Rondigo is a woman-owned business. R. 4, Amended Complaint ¶¶ 208-09. They allege the state defendants took actions "based on considerations other than those proper to the good faith administration of justice, . . . far outside the scope of legitimate law enforcement or prosecutorial discretion." *Id.* at ¶ 212. These actions were allegedly taken under color of state law and resulted in the denial of plaintiffs' right to equal protection of the law. *Id.* at ¶ 213. In support of the charge that defendants' actions were discriminatory, plaintiffs allege that Rick Minard, "who operated a similarly

situated farm operation which conducted on-farm composting," received more favorable treatment than they did. *Id.* at ¶¶ 117, 118. Specifically, they allege that Minard's compost operations plan was approved without having to meet new and additional requirements imposed on them, including an engineered site plan, soil borings and a nutrient management plan. *Id.* at ¶ 133.

The district court held these allegations were sufficient: "Plaintiffs have articulated a cognizable, constitutional claim for violation of equal protection by alleging that the State Defendants discriminated against them in investigations/proceedings by gender." R. 95, Report and Recommendation pp. 41-42. The court also held the equal protection right asserted by plaintiffs was clearly established: "It was clearly established that the Equal Protection Clause prohibited intentional gender discrimination unless it was substantially related to a legitimate government objective." *Id.* at 42. Accordingly, the district court rejected defendants' qualified immunity defense at the pleading stage.

Qualified immunity shields government officials from liability and from suit for damages for discretionary actions taken in the performance of their duties as long as they did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009). The purpose of the doctrine is to ensure that insubstantial claims against government officials are resolved at the earliest possible stage in litigation. *Id.* When the qualified immunity defense is raised at the pleading stage, the court must determine only whether the complaint "adequately alleges the commission of acts that violated clearly established law." *Back*, 537 F.3d at 555-56 (quoting *Mitchell*, 472 U.S. at 526). Plaintiffs' right to freedom from invidious discrimination under the Equal Protection Clause was certainly clearly established at all times pertinent to this action; the fundamental question presented in this case is whether plaintiffs' complaint alleges sufficient facts to make out valid equal protection claim—i.e., sufficient facts to "raise the right to relief above the speculative level," sufficient facts to make out a "plausible claim," one beyond the line of "sheer possibility."

The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Plaintiffs' allegations arguably implicate the second and third types of equal protection claim, alleging Rondigo was discriminated against as a woman-owned business or was treated differently as a "class of one" without rational basis. The district court construed the claim solely as one for gender-based discrimination and held the allegations facially sufficient without identifying a single fact allegation of gender-based discriminatory animus by any of the five state defendants. Indeed, among the 250 paragraphs of the amended complaint, there is no single allegation of action taken by any of the defendants that hints at gender-based discriminatory animus. Plaintiffs' mere allegations that Dolores Michaels is a woman and Rondigo is a woman-owned business do not make out a claim for gender-based discrimination targeting them as members of a suspect class.[2]

In their appellate brief, the Rondigo plaintiffs do not argue otherwise, but rely on their allegations that Rick Minard was treated more favorably, despite being similarly situated, as justifying an inference of unlawful discrimination. That is, plaintiffs now argue that their allegations make out a valid "class of one" theory of discrimination. To prevail based on such a theory, plaintiffs must show that Minard was similarly situated in all relevant respects. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 2000). In addition, plaintiffs must show that the adverse treatment they experienced was "so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Warren v. City of Athens*, 411 F.3d 697, 710-11 (6th Cir. 2005) (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 84 (2000)). This showing is made either by

---

[2]Not only does the complaint lack allegations of gender-based discrimination, but its assertion that Rondigo, LLC is a woman-owned business appears not to be substantiated. In the entity's articles of organization filed with the Michigan Department of Consumer and Industry Services, Ronald Michaels is listed as the member who serves as resident agent of Rondigo. The entity's most recent Annual Statement, filed for 2011 with the State of Michigan, continues to list Ronald Michaels as the authorized member, manager, or agent. Dolores Michaels is not listed in any capacity in any of these filings.

negativing every conceivable reason for the government's actions or by demonstrating that the actions were motivated by animus or ill-will. *Id.* at 711.

The state defendants contend plaintiffs' equal protection claim falls short because their bald allegation that Minard is similarly situated, without more, is insufficient. Of course, plaintiffs' *allegation* that Minard is similarly situated does not exactly stand alone. Even though Rule 12(b)(6) scrutiny is limited to the pleadings, the pleadings in this case include numerous exhibits attached to the complaint, as well as exhibits attached to defendants' motion to dismiss that are referred to in the complaint.

Plaintiffs allege they were subject to less favorable treatment than Minard in three ways. First, whereas Minard's 17-page hand-written compost management plan was approved without any requirements that he provide an engineered site plan, soil boring results, and a nutrient management plan, plaintiffs' compost operations plan was not approved, even though it is more thorough and professional and meets the additional requirements placed on them. Second, Minard's compost operation, unlike plaintiffs', has allegedly not been subject to the scrutiny of repeated site inspections. Third, Minard's compost operation has allegedly not been referred by MDA to MDEQ for investigation of potential pollution.

Yet, even accepting that Minard was not in fact subjected to any of these various adverse treatments, an inference of discriminatory animus arises only if the state defendants' proffered reasons for the actions are negated or shown to be irrational. Here, however, according to exhibits attached to plaintiffs' own complaint, as summarized above, the state defendants gave facially legitimate reasons for their actions. The requirements for an updated site plan, soil borings and revised nutrient management plan were triggered by the discoveries, during site inspections, that plaintiffs had stockpiled large amounts of leaves in an area with a seasonal high water table, creating potential for groundwater pollution. Plaintiffs' allegations neither impugn the genuineness or significance of these discoveries nor aver that Minard's composting

operation was subject to similar problems or deficiencies that should have also forestalled MDA approval of his composting operation.[3]

Second, according to plaintiffs' own exhibits, defendants' frequent inspections of their property were precipitated by township residents' complaints of odors. Plaintiffs allege these complaints were false and unsubstantiated, as verified by the site inspections, but this does not alter the facial legitimacy of the state defendants' purpose for conducting the inspections. And again, there is no allegation that Minard's operation was the subject of neighbors' complaints, false or otherwise, that went unheeded by the state defendants.

Third, exhibits attached to the complaint show that the 32 Mile Road operation was referred to MDEQ for investigation only after the Rondigo plaintiffs' persistent failure to remove leaves rendered their operation out of compliance with GAAMPs. Plaintiffs have not alleged that they did in fact remove the leaves and that the potential for groundwater pollution was remedied. Nor do they allege that Minard was found to be in compliance with GAAMPs despite similar deficiencies, or that his operation was not referred to MDEQ despite a finding that he was similarly out of compliance with GAAMPs.

Although plaintiffs' amended complaint contains 250 paragraphs and occupies 54 pages, it contains precious little factual support for the theory that the state defendants' more favorable treatment of Minard demonstrates they were victims of unlawful discrimination. Although plaintiffs conclusorily allege that Minard is similarly situated, exhibits attached to their complaint substantiate undisputed and facially legitimate reasons for the state defendants' complained-of actions in regulating plaintiffs' compost operation at 32 Mile Road—reasons that appear to be unique to that property. Although plaintiffs make various allegations that the state defendants, acting in concert with Richmond Township and its residents, have been unfairly demanding in

---

[3]To the contrary, an exhibit attached to defendants' motion to dismiss (properly considered part of the pleadings by virtue of plaintiffs' allegation in ¶ 117 of the amended complaint) demonstrates that Minard's compost operation was approved by Mahoney only after a site inspection, correction of a deficiency, and verification that the operation complied with GAAMPs. R. 48, Motion to Dismiss ex. 7.

their enforcement of agricultural and environmental standards, no inference of unlawful discrimination can legitimately arise where the only asserted comparable, Minard, is shown by plaintiffs' own pleadings to be *dissimilarly* situated in several relevant respects.

In short, plaintiffs' allegations that Minard is similarly situated and that his more favorable treatment by defendants evidences unlawful discrimination are exposed as little more than "legal conclusions couched as factual allegations" and need not be accepted as true under Rule 12(b)(6) scrutiny. *See Twombly*, 550 U.S. at 555. Plaintiffs' *factual* allegations fail to "raise the right to relief above the speculative level." *Id.* They fail to warrant a "reasonable inference that [defendants are] liable for the misconduct alleged." *See Iqbal*, 129 S. Ct. at 1949. When the allegations are viewed in light of the exhibits attached to the complaint, they fall far short of making out a "plausible claim of entitlement to relief" under either equal protection theory. *See id.*

As such, plaintiffs' "insubstantial" equal protection claim was ripe for dismissal under the doctrine of qualified immunity at the earliest possible stage in the litigation. *See Pearson*, 129 S.Ct. at 815. The district court's contrary ruling is based in part on a failure to apply the Supreme Court's teaching in *Twombly* and *Iqbal*. The district court expressly recognized the applicability of *Twombly*, recognized that legal conclusions need not be accepted as true, and recognized that the complaint must set forth "some factual basis" for the claims asserted. Yet, the court accepted plaintiffs' alleged legal conclusions that Minard was similarly situated and that they were treated differently because of gender-based discrimination without requiring supporting factual allegations. This casual acceptance of plaintiffs' conclusory allegations of unlawful discrimination is at odds with the district court's earlier determination (in dismissing other claims against the state defendants) that "there is nothing to suggest that these Defendants' actions were not taken in good faith and pursuant to applicable statutes." R. 95, Report and Recommendation at 31-32. In fact, this precise characterization applies to the equal protection claim as well. Nothing but legal conclusions suggests that the state defendants acted with unlawful discriminatory animus. By accepting these legal

conclusions as sufficient, the district court failed to heed the teaching of *Iqbal*, 129 S.Ct. at 1950 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))).

## IV.  CONCLUSION

Based on the foregoing analysis, we conclude the district court erred by denying the state defendants' motion to dismiss based on qualified immunity.  The factual allegations in the complaint, viewed in conjunction with the exhibits attached to the complaint, are insufficient to make out a valid equal protection claim under the "plausibility standard" prescribed by the Supreme Court in *Twombly* and *Iqbal*.  We therefore **REVERSE** the district court's order denying qualified immunity to the state defendants on the equal protection claim and **REMAND** the case to the district court for entry of an order dismissing the equal protection claim against the state defendants and for further proceedings not inconsistent with this opinion.