NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0576n.06

No. 17-2381

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

DEBORAH K. SCHLUSSEL,

      Plaintiff-Appellant,

v.

CITY OF DEARBORN HEIGHTS; CITY OF DEARBORN POLICE DEPARTMENT; DANIEL PALETKO; GARY T. MIOTKE; LEE GAVIN,

      Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Nov 19, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

Before: BATCHELDER, KETHLEDGE, and WHITE, Circuit Judges.

KETHLEDGE, Circuit Judge. Deborah Schlussel filed a request with the City of Dearborn Heights under Michigan's Freedom of Information Act (FOIA) to obtain booking photographs of a Muslim woman without her religious headscarf. The City denied Schlussel's request, citing a privacy exception to FOIA. In response, Schlussel sued the City and various Dearborn Heights officials (collectively, "the City"), alleging that the City violated her state and federal rights by denying her FOIA request. The district court dismissed Schlussel's federal claims and declined to exercise supplemental jurisdiction over her state-law claims. We affirm.

I.

In 2014, Dearborn Heights police officers arrested Malak Kazan, a Muslim woman, and required her to remove her religious headscarf for the booking photographs. As a result, Kazan later sued the City under the Religious Land Use and Institutionalized Persons Act (RLUIPA). *See*

42 U.S.C. § 2000cc-2. During that litigation, Kazan's lawyer, Amir Makled, used a FOIA request to obtain the photos of Kazan without her headscarf. Kazan and the City ultimately settled. As part of their settlement agreement, the City implemented a "Policy Regarding Booking Procedure for Females Wearing Hijab, Burka, or Other Religious Head Covering." The policy provided, among other things, that booking photographs of Muslim women without their religious head covering would not be made available to the public.

Almost a year after the policy took effect, a journalist, Deborah Schlussel, requested copies of "any and all booking photos" taken of Kazan "without her hijab/Muslim headscarf," in addition to other documents and materials related to Kazan's 2014 arrest. The City granted Schlussel's request in part, but denied her request for photos of Kazan without her hijab, citing a privacy exception to Michigan's FOIA statute. *See* Mich. Comp. Laws § 15.243(1)(a). Schlussel appealed the City's decision to the Mayor, who denied her appeal.

Schlussel thereafter filed suit in federal district court, asserting several federal constitutional claims, as well as related claims under state law. The district court dismissed Schlussel's federal claims under Rule 12(c), and declined to exercise supplemental jurisdiction over her state-law claims. Schlussel now appeals.

II.

This court reviews the district court's dismissal under Rule 12(c) de novo and in the same manner as we review a dismissal under Rule 12(b)(6). *See Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). To survive a Rule 12(b)(6) dismissal, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must put forth more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.*

A.

Schlussel claims that the City violated her equal protection rights when it denied her FOIA request, despite granting the "virtually identical" request of Kazan's lawyer, Makled.  Schlussel contends that the only apparent differences between her and Makled were gender (female versus male), religion (Jewish versus Muslim), and national origin (United States versus Lebanon). Schlussel asserts that the City treated her differently based on these classifications without any legitimate or compelling reason for doing so.

To state an equal protection claim, Schlussel needed to allege that the City burdened a fundamental right, targeted a suspect class, or intentionally treated her differently than others similarly situated without any rational basis for doing so.  *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011).  Schlussel does not argue that defendants burdened her fundamental rights, so the question is whether Schlussel has alleged facts to support either of the other two theories.

As for the suspect-class theory, Schussel merely asserts that the City treated her differently than it did a Muslim Lebanese-born man.  She does not allege any facts indicating that her gender, religion, or national origin were the reason for the differential treatment.  Schlussel has thus failed to make a claim that the City discriminated against her based on her membership in a suspect class. *See id*. at 682.

That leaves the rational-basis theory, which requires Schlussel to make allegations that would support a finding that Makled "was similarly situated" to her.  But Schlussel has not done that.  Makled was Kazan's attorney, and he requested the booking photos in connection with his representation of Kazan in her suit against the City.  Schlussel, in contrast, had no connection to Kazan.  Makled made his FOIA request in November 2014; Schlussel made hers 14 months later,

after the City had adopted the policy that served as a basis for denying Schlussel's request. And when the City denied Schlussel's request, it relied on the privacy exception to Michigan FOIA—an exception that likely would not apply to disclosures to the attorney of the person photographed. Thus, Schlussel and Makled were not similarly situated, and the City had rational reasons to treat their requests differently. Schlussel's equal protection claim therefore fails.

Schlussel also asserts a derivative *Monell* claim against the City itself, but that claim fails because she has not stated a claim for an Equal Protection violation. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 388 (6th Cir. 2017).

B.

Schlussel also claims that the City violated the Establishment Clause because, in her view, the City's policy favors "one religion over all others" by "specifically exempting only Muslim women from the FOIA laws."

As an initial matter, Schlussel barely develops her Establishment Clause argument in her brief. Nor does Schlussel allege that she personally, or anyone else for that matter, has objected on religious grounds to removing a head covering while in the City's custody, and been denied the same accommodation that the City extends to Muslim women. She thus objects only to the City's accommodation of a particular faith, rather than to how the City has treated anyone else.

What Schlussel does say is that the policy amounts to a forbidden "entanglement" with religion under *Lemon v. Kurtzman*, 403 U.S. 602, 613 (1971). Whether a governmental action amounts to "excessive entanglement" depends on "the character and purposes of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between the government and religious authority." *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 788 F.3d 580, 593 (6th Cir. 2015). None of those concerns are present here. The City's booking

policy benefits people, not "institutions." *Id*. Nor has the City provided "aid" to a religious organization. Nor is there any "relationship between the [City] and religious authority." *Id*. at 594. Rather, the City implemented the policy as an accommodation of free-exercise rights after Kazan challenged the City's booking procedures under RLUIPA. Schlussel's argument under the Establishment Clause, to the extent she makes one here, is meritless.

C.

Schlussel otherwise claims that the City violated her rights to free speech and "freedom of the press" under the First Amendment. Schlussel failed to develop this argument on appeal, however, so the argument is forfeited. *See McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997).

The district court's judgment is affirmed.