NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0125n.06

Case No. 18-3796

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Mar 15, 2019
DEBORAH S. HUNT, Clerk

COLUMBIA PARK EAST MHP, LLC;
COLUMBIA MHC EAST, LLC, dba
Columbia Park Water and Sewer System; and
KENNTH BURNHAM,

      Plaintiffs-Appellants,

v.

U.S. BANK NATIONAL ASSOCIATION;
C-III ASSET MANAGEMENT, LLC;
ANDREW FARKAS; and
JOHN DOES,

      Defendants-Appellees,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

**OPINION**

BEFORE: McKEAGUE, GRIFFIN, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Rarely do we preside over a run-of-the-mill foreclosure case like the one here today. That's because plaintiffs rarely accuse the opposing party of operating a racketeering enterprise with a court-appointed receiver. Those are weighty accusations, and in this case, they're also meritless. The district court correctly dismissed the complaint. We affirm.

I.

Plaintiff Columbia Park East, MHP, LLC ("Columbia Park East")[1] entered into a loan agreement with General Electric Capital Corporation to borrow $55,000,000, secured by a

---

[1] The other plaintiffs in this case are Columbia MHC East LLC and Kenneth C. Burnham. Burnham owns an interest in Columbia Park east and is a principal of Columbia MHC East LLC. R. 1, ¶ 4.

mortgage on several pieces of property.[2] General Electric eventually assigned its interests to one of the defendants, U.S. Bank National Association, the trustee of a Merrill Lynch mortgage trust. Sometime after that, Columbia Park East defaulted on its obligations, and U.S. Bank brought a foreclosure action in Ohio state court. *See U.S. Bank Nat'l Assoc. v. Columbia Park East MHP LLC, et al.*, Case No. CV-17-887110 (Ct. Common Pleas, Cuyahoga Cty., Ohio). As part of that action, the Ohio court appointed a receiver to preserve the property under dispute.

According to the complaint, the defendants worked together with the state-appointed receiver to unlawfully seize property and charge fees that are otherwise not permitted by the terms of the loan agreement. Most of these allegations are conclusory. The plaintiffs allege that the receiver is an agent of the defendants, without any factual explanation to support such a claim. And they repeatedly allege that various demands for payment or the seizure of certain assets were "illegal," "wrongful," "unauthorized," and "fraudulent"—again without providing any factual content to these claims. *See, e.g.,* R. 1, ¶¶ 13, 14, 17, 18, 20, and 23.

The facts that plaintiffs *do* allege are slim and easy to distill. After the receiver was appointed by the state court, the receiver took control of several assets belonging to the plaintiffs. R. 1, ¶¶ 13, 14, and 16. Both the receiver and the defendants have made demands for payment that the plaintiffs believe are contrary to the terms of the loan agreement. *Id.* ¶¶ 18, 20, and 22. And the plaintiffs also allege that the defendants will not "allow the loan to be repaid" unless these disputed (or as they call them, "illegal") costs and fees are paid. *Id.* ¶ 23.

---

[2] Some of the background giving rise to the dispute can be gleaned from the loan documents attached to the defendants' motion to dismiss. The plaintiffs refer to the loan documents in their complaint, permitting us to consider them without converting the defendants' motion to one for summary judgment. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011). In any event, these details provide much-needed color to the case but turn out not to be material to its resolution.

On top of that, the plaintiffs contend that this foreclosure is part of the regular business practice of the defendants. Or at least, *some* of the defendants. They allege that the defendants in this case are "mostly the same actors, or affiliates who committed the multiple fraudulent acts in" a case from 2013. R. 1 ¶ 12. That allegation—intended to establish continuity between the fraudulent acts of this alleged enterprise—is not exactly accurate. The only defendant appearing in both cases is U.S. Bank, a national lender headquartered in Minneapolis, Minnesota. The plaintiffs also allege that the court-appointed receiver is "affiliated" with the receiver from the 2013 case. But like the other conclusory allegations in the complaint, they provide no factual allegations to support this assertion. *See id.* ¶¶ 12 and 48. None of the other parties from the 2013 suit are part of the purported scheme here.

Though the state foreclosure proceeding remains ongoing, the plaintiffs filed suit in federal court against the defendants for racketeering, along with other state-law claims. The district court dismissed the suit after finding that the plaintiffs' allegations could not support a claim under RICO. The plaintiffs then filed this appeal.

II.

We must assume for now that the complaint's factual allegations are true. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). But that does not mean we must credit the complaint's conclusory allegations or any "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Our job on an appeal from a motion to dismiss is to examine the complaint's factual content and determine whether, taking those facts as true, the plaintiffs "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Every RICO claim requires proving that the defendants engaged in a pattern of racketeering through the operation of some kind of enterprise. *See Ouwinga v. Benistar 419 Plan Servs., Inc.*,

694 F.3d 783, 791 (6th Cir. 2012). The district court held that the plaintiffs' allegations do not establish the existence of a continuous enterprise. On appeal, the plaintiffs challenge that conclusion, arguing that that the lower court applied the wrong standard. The plaintiffs contend that the court improperly conflated the analysis for establishing a pattern of racketeering with the analysis for establishing an enterprise. No matter, the defendants say. The plaintiffs failed to plead the elements of a claim for RICO either way, so we should affirm. We agree.[3]

Both of these elements—the existence of an enterprise and a pattern of racketeering—rely on durational concepts. An enterprise must have longevity—it must exist long enough for the individual associates "to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). And a defendant engages in a pattern of racketeering only when the predicate acts are "part of a long-term association that exists for criminal purposes." *Ouwinga*, 694 F.3d at 795. We call this latter requirement "continuity." For some cases—perhaps this one—these durational elements overlap because the alleged enterprise exists *only* to racketeer. *See Boyle*, 556 U.S. at 947–48; *see also United States v. Turkette*, 452 U.S. 576, 583 (1981). But in others, the enterprise might exist independently from the racketeering, making the proof of longevity different than the proof of continuity.

---

[3] We note also that the defendants point to several other deficiencies in the plaintiffs' RICO claim, any one of which likely proves fatal. The "enterprise"—which allegedly came into existence in 2013—consists of a national bank and a handful of other players, none of whom participated in the racketeering effort six years ago. Nor do the plaintiffs explain how the enterprise operated outside of a few conclusory allegations that the court-appointed receiver (not a party to this case) acted as an agent of U.S. Bank. We also doubt that any of the demands made by the defendants or the receiver in this case amount to predicate acts under RICO. But because the plaintiffs' complaint must be dismissed for exactly the reason stated by the district court—a lack of continuity in the alleged pattern of racketeering—we focus on that issue only.

Regardless, these are distinct concepts requiring different analyses, and the district court erred by conflating them. *See Turkette*, 452 U.S. at 583. But that error turns out to be harmless.[4] Even if the plaintiffs adequately alleged the existence of a RICO enterprise (which we doubt), their complaint is wholly insufficient with respect to pleading a continuous pattern of racketeering.

As the district court correctly noted, there are two ways that a plaintiff can allege the kind of continuity required for RICO. *See Ouwinga*, 694 F.3d at 795. Close-ended continuity exists where a defendant engaged in a long but finite pattern of racketeering. *See id.*; *see also Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 409–10 (6th Cir. 2012). Though the plaintiffs made an allegation of close-ended continuity in their complaint, R. 1 ¶ 46, they abandoned it on appeal. *See* Appellants' Br. at 21–22. So that leaves open-ended continuity, the second path for establishing a pattern of racketeering. To plead a case of open-ended continuity, the plaintiffs must show "a distinct threat of long-term racketeering activity" or "that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 726–27 (6th Cir. 2006) (internal quotation marks omitted). The inquiry turns on whether the alleged racketeering is likely to end.

Here, the plaintiffs' allegations come up short. The only pattern of racketeering alleged in the complaint centers on a loan dispute already being litigated in Ohio state court. As the district court explained, that litigation will eventually come to an end. Once that happens, the disagreement over fees will end with it. Nothing in the complaint suggests that the defendants will continue to demand allegedly unlawful fees after the Ohio court resolves the matter. And the only allegation

---

[4] As we explain below, the district court correctly analyzed the "continuity" question here but incorrectly concluded that the lack of continuity, strictly speaking, went to the question of whether the alleged enterprise existed. While that might technically be error, the Supreme Court has explained that "longevity" includes considerations of continuity similar to those that might establish a pattern of racketeering. *See Boyle*, 556 U.S. at 948.

suggesting that this constitutes a regular way of business for the defendants comes in the form of a single, six-year-old loan dispute involving *only one* of the defendants in this case—a national bank that presumably litigates both legitimate and illegitimate loan disputes with some frequency. That does not lead to a plausible inference that the defendants here are operating an enterprise that regularly engages in fraudulent activity. *See id.*

The plaintiffs contest both points. First, they argue that the threat of future racketeering is alive and well because no one knows how long the state-court litigation will continue. That may be true, but it does not establish the kind of ongoing threat of criminal conduct necessary to prove an open-ended pattern of racketeering. *See Vemco, Inc. v. Camardella*, 23 F.3d 129, 134–35 (6th Cir. 1994). Open-ended continuity requires an *indefinite*, as opposed to *unknown*, end date. *See Heinrich*, 668 F.3d at 410 (contrasting a pattern of racketeering that is "inherently terminable" with one that had no "built-in ending point" while it was ongoing). The allegations of fraud in this case all arise within the context of a single state-court lawsuit that will end at a definite point in time, even if we cannot yet say when that is. The plaintiffs make no allegations that suggest the fraudulent activity will continue after that lawsuit terminates. Instead, they argue only that the number of fraudulent demands during the pendency of the lawsuit remains indefinite. But distinguishing between open- and close-ended continuity is about the period of the racketeering, not the number of predicate acts. Without an allegation suggesting that the conduct will continue after the litigation ends, we cannot infer from the complaint a threat of ongoing racketeering. *See Moon*, 465 F.3d at 727.

Nor are the plaintiffs saved here by their reference to a 2013 lawsuit that also involved U.S. Bank. The plaintiffs argue that the allegations here amount to the regular business practices of the defendants because—more than five years ago—U.S. Bank was a party to a similar lawsuit over a

loan dispute. Leaving aside the question of whether the 2013 litigation involved the same enterprise (because only one of the defendants here was a defendant in that case), the existence of one prior loan dispute with a national bank does not create an inference that this is a regular way of doing business for the defendants. *See id.* We have previously rejected the argument that even "several instances of similar conduct" are enough to "leap . . . to the conclusion that Defendants customarily" engaged in fraud. *Id.* at 728. That leap, we held, is "too great," *id.*, and it is even less compelling here. A single example of similar misconduct from several years ago does not lead to an inference that this is the regular way of doing business for the defendants.

At bottom, the plaintiffs have attempted to turn an ordinary loan dispute into a RICO case with conclusory allegations about a long-term pattern of fraud. The district court correctly found that the plaintiffs failed to allege that the defendants engaged in a continuous pattern of racketeering, even if the court misplaced its analysis. We affirm.