NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0574n.06

No. 18-2334

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BENJAMIN LOPEZ, | ) | **FILED** |
| | ) | Nov 18, 2019 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | |
| REGAN FOERSTER, et al., | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Defendants, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| RANDY GRAHAM, individually and in his official | ) | |
| capacity, jointly and severally, | ) | |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | |

BEFORE: BOGGS, SUHRHEINRICH, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Randy Graham appeals the district court's denial of his request to file a motion for judgment on the pleadings based on qualified immunity. We have jurisdiction to review the district court's denial because it constituted an effective denial of qualified immunity. However, because the parties have provided very little briefing on the ultimate qualified-immunity question and there is no reasoned decision by the district court, we remand for the parties and the district court to address the merits of the motion in the first instance.

**I.**

Defendant Regan Foerster, a police officer with the Traverse Narcotics Team, worked with a confidential informant in a drug investigation of Benny Lopez (Benny), a person with a similar name but no other connection to Plaintiff Benjamin Lopez.[1] Foerster was present while the confidential informant called a person identified as Benny to arrange a controlled buy of heroin. During the controlled buy, after the confidential informant gave money to the person identified as Benny, Foerster followed Benny to a library parking lot and observed him meet with two persons in a Cadillac Escalade. Foerster then followed Benny to a video-store parking lot, where Benny met with the confidential informant and gave him a gram of heroin. Other detectives from the Traverse Narcotics Team stopped the Escalade and identified the driver and passenger.

Foerster was not able to see Benny well enough to identify him due to poor lighting. Foerster did not connect Plaintiff to the telephone number used by Benny during the recorded calls with the confidential informant or to the Escalade used during the controlled buy. Plaintiff lives in Grand Rapids, Michigan; the controlled buy occurred in Traverse City, Michigan.[2] An individual named Benny Lopez resided in the Traverse City area at the time and was on parole. Foerster prepared an incident report about the controlled buy of heroin. According to the complaint, Graham, Foerster's supervisor, reviewed Foerster's incident report and "instructed, encouraged, and aided Defendant Foerster in pursuing a warrant for Plaintiff" although "[a] reasonable officer with appropriate Fourth Amendment training would have known that Defendant Foerster's incident report . . . did not support a finding of probable cause that Plaintiff had

---

[1] Unless otherwise noted, the facts are taken from allegations in the complaint, which we accept as true for purposes of this appeal.

[2] Traverse City is about 140 miles north of Grand Rapids.

committed a crime." (R. 1, PID 5.) Foerster then procured an arrest warrant based in part on his false statement that he observed Plaintiff engage in a hand-to-hand transaction.

Plaintiff was arrested and held in jail for twenty-three days before the charges against him were dismissed and he was released. He filed this action against Foerster, Graham, and others, alleging various constitutional claims under 42 U.S.C. § 1983. As relevant here, Plaintiff alleged a malicious-prosecution claim against Graham.

## II.

With limited exceptions, the district court's Guidelines for Civil Practice require a pre-motion conference with the district court before a party may file a dispositive motion.[3] To obtain a pre-motion conference, parties must file a request with the district court briefly setting forth the grounds for the motion. Accordingly, Graham filed a request for a pre-motion conference, explaining that he intended to move for dismissal for failure to state a claim and based on qualified immunity.

At the outset of the conference, the district court expressed skepticism that a dispositive motion would succeed on a motion to dismiss:

> After reviewing your stuff, your filings, I am really skeptical that this case is at a point where it is likely that a dispositive motion will succeed because I just think, it appears to me, that's what we're here to talk about, it appears to me that the defendants are a little premature here. And I base that primarily on the responses by the plaintiff. And I would like to hear some -- I really want to hear from both sides the basis for your positions.

(R. 37, PID 174.) In arguing his position, Graham's counsel made no reference to the report or the complaint. Instead, he relied heavily on facts not included in the complaint. For example, Graham's counsel claimed that Graham "was on vacation while the controlled buy of heroin

---

[3] *See* Information and Guidelines for Civil Practice before the Honorable Janet T. Neff, United States District Judge, United States District Court for the Western District of Michigan, at 3 (rev. Sept. 2016), https://www.miwd.uscourts.gov/sites/miwd/files/Neff_Civil_Guidelines.pdf (last visited Sept. 6, 2019).

occurred" and that "quite simply as a supervisor he reviews lots of incident reports and he simply encourages if they have information that would warrant further prosecution for all the people to push their cases along and seek arrest warrants and so forth." (*Id.* at PID 176–77.) Later, Graham's counsel argued that Graham gave Foerster "the choice to either do what he deemed best, either do more buys or go for an arrest warrant. Presumably going for the arrest warrant, that stuff is going to be reviewed by many other people. And it's going to determine whether probable cause exists." (*Id.* at PID 179–80.)

> The district court eventually ended the discussion:

> But there again, you know, you're talking about things that are disputed and will require discovery to flesh out. I think -- frankly, I think that the plaintiff's responses here all the way around have at the very least arguable merit, and as I said earlier, I am very skeptical that this is a case that is going to be dismissed at the pleading stage.

(*Id.* at PID 180.) The district court then raised the prospect of mediation and, after the parties agreed to participate, discussed the mediation procedure. The district court entered a written order denying Graham's request to file a dispositive motion as premature and further ordered the parties to mediate.

After completing mediation, Graham filed his answer to the complaint and another request for a pre-motion conference, explaining that he intended to move for judgment on the pleadings for failure to state a claim and based on qualified immunity, making essentially the same argument that he made in his prior request for a pre-motion conference. After Plaintiff filed his response, the district court denied the request as premature, explaining that it had "previously conducted a Pre-Motion Conference and denied Defendant Graham's same essential motion under Rule 12(b)(6)," further noting that "Defendant provides no changed circumstances to justify the renewed [pre-motion conference request] under Rule 12(c)." (R. 31, PID 161.)

Graham then filed this interlocutory appeal and sought a stay of discovery. We denied the stay.

**III.**

We have jurisdiction to review a district court's order denying qualified immunity "if the appeal is premised not on a factual dispute, but rather on 'neat abstract issues of law.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Johnson v. Jones*, 515 U.S. 304, 317 (1995)). Although the district court denied Graham's request to file a formal motion for judgment on the pleadings based on qualified immunity, the parties appear to agree that the district court's order constituted an effective denial of qualified immunity at the pleading stage. *See Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) ("[T]he district court's refusal to address the merits of the defendant's motion asserting qualified immunity constitutes a conclusive determination for the purposes of allowing an interlocutory appeal.").[4]

Plaintiff argues that we do not have jurisdiction because the district court denied Graham's request to file a motion due to disputed material facts. Although Graham contested some of the facts alleged in the complaint at the hearing with the district court, his argument on appeal is framed as a legal question. We therefore have jurisdiction. *See Kennedy v. City of Cincinnati*, 595 F.3d 327, 333 (6th Cir. 2010) ("Nevertheless, that the district court here denied defendants' motion for summary judgment on the ground that genuine issues of material fact exist does not necessarily preclude our jurisdiction over defendants' appeal. Rather, we have recognized that, *regardless of the district court's reasons* for denying qualified immunity, we may exercise

---

[4] Plaintiff briefly argues that the appeal is moot because Graham has already gone through discovery and can now seek to file a summary-judgment motion. We disagree. A ruling in Graham's favor could end the case against him and avoid the need to file a summary-judgment motion.

jurisdiction over the . . . appeal to the extent it raises questions of law." (ellipsis in original) (internal quotation marks and citations omitted)).

Although we have jurisdiction to decide the qualified-immunity question, given the unique circumstances of this case, we remand to the district court to consider the issue in the first instance. The district court here did not issue a written order, and its reasons for rejecting Graham's request to file the motion were not sufficiently explained. Further, the briefing regarding qualified immunity is inadequate. There is limited briefing in the district court because Graham was not permitted to file a formal motion. On appeal, Plaintiff represents that he brought only a single claim against Graham, based on Graham's own conduct, for malicious prosecution and argues briefly that Graham is not entitled to qualified immunity on that claim. The bulk of Plaintiff's argument focuses on evidence uncovered in discovery; but Graham was seeking judgment on the pleadings. For Graham's part, he never discusses malicious prosecution, instead framing his qualified-immunity argument in terms of supervisory liability. Because there is minimal relevant briefing and no reasoned decision by the district court to review, we remand for the parties and the district court to address these issues.

Although district courts "have wide discretion to manage their own dockets," *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999), and pre-motion conferences "may serve the useful purpose of narrowing and resolving conflicts between the parties and preventing the filing of unnecessary papers," *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987), district courts should not in most circumstances prevent parties from filing motions authorized by the Federal Rules. This is especially true for motions raising a qualified-immunity defense, which is not merely a defense to liability, but an immunity from suit that shields public officials against the burdens of litigation. *See Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009). On remand, the

district court should permit Graham to file a dispositive motion based on qualified immunity and rule on that motion after briefing from the parties. *See Summers*, 368 F.3d at 886 ("[W]hen faced with a motion based on qualified immunity, a district court can not avoid ruling on the issue.").

**IV.**

For the reasons set out above, we remand for proceedings consistent with this opinion.

SUHRHEINRICH, J., dissenting. The Complaint does not state a cause of action for malicious prosecution against Defendant Graham. Graham is therefore entitled to the protection of immunity from not just liability, but litigation. He has yet to receive that right, however, because the district court did not allow Graham to file either a Rule 12(b)(6) or Rule 12(c) motion. Remanding for further proceedings only further eviscerates Graham's entitlement to protection from suit—which is the point of qualified immunity. For this reason, I dissent.

The only allegation against Graham is that he "reviewed Defendant Foerster's incident report relating to the June 22, 2017 controlled buy of heroin and instructed, encouraged, and aided Defendant Foerster in pursuing a warrant for Plaintiff" which "did not include facts which would support a finding of probable cause that Plaintiff had committed a crime." ¶¶ 48—49 R. 1, ID# 5. So, according to the Complaint, Graham read the incident report and encouraged Foerster to seek a warrant.

Yet, "[t]o be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to *passively or neutrally participating*." *Sykes v. Anderson*, 625 F.3d 294, 308 n.5 (6th Cir. 2010) (emphasis added). This means that a defendant's participation must be marked by "some kind of blameworthiness, something beyond mere negligence or innocent mistake." *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015). The participation-in-the-decision component thus requires a showing that the defendant "stated a deliberate falsehood or showed reckless disregard for the truth" that was material to the probable cause finding. *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006). *See, e.g., King v. Harwood*, 852 F.3d 568, 575, 582—84 (6th Cir. 2017) (finding that a fact question precluding qualified immunity on a malicious prosecution claim where the officer allegedly "gave false testimony, withheld exculpatory evidence," and provided misleading testimony before a grand

jury), *cert. denied*, 138 S. Ct. 640 (2018); *Webb. v. United States*, 789 F.3d 647, 663-66 (6th Cir. 2015) (reversing summary judgment on qualified immunity where the officer allegedly conspired with confidential informant to frame innocent persons as drug dealers and knowingly made false reports and testimony); *Sykes*, 625 F.3d at 311—17 (affirming malicious prosecution claims where one sergeant provided false testimony at preliminary hearing and another sergeant provided knowing misstatements to the prosecutor). But the Complaint does not allege that the incident report contained a false or grossly misleading statement that Graham knew or should have known to be false or misleading. By the Complaint's account, Graham's role in Lopez's arrest was at most passive or neutral participation. Thus, the Complaint does not assert a malicious prosecution claim against Graham.

The Complaint also asserts that "Defendant Foerster submitted a warrant request" and "obtained the warrant by falsely swearing under oath to a complaint that alleged that Defendant Foerster observed Benjamin Ben Lopez engaged in a hand-to-hand transaction of suspected narcotics . . . [without] disclos[ing] that he could not positively identify Benjamin Lopez." ¶¶54, 55, 57, R. 1, ID# 6. But, again, the Complaint does not allege that *Graham* participated in that process or knew that Foerster "falsely sw[ore] under oath" to get it. ¶ 54, R. 1, ID# 6. Unless Graham (as Foerster's supervisor) directed Foerster to seek a warrant for Plaintiff's arrest based on information *Graham* knew was false, or misleading, he did not "participate" in Plaintiff's arrest. Thus, stating in the Complaint that Graham "instructed, encouraged, and aided Defendant Foerster in pursuing a warrant for Plaintiff," ¶ 48, is nothing more than a "legal conclusion couched as a factual allegation," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), which "need not be accepted as true," *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). *See generally King v. Harwood*, 852 F.3d at 580 (articulating the first element of a malicious

prosecution claim as "a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the decision to prosecute").

As such, the Complaint in this case was the proper subject of a Rule 12(b)(6) or (c) motion. That did not happen, however, because the district court, employing its own local rule, twice refused to allow Graham to file a motion to dismiss or a motion on the pleadings based on qualified immunity.

Although district courts have broad discretion to manage their dockets, *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999), they must do so in "a[] manner consistent with federal law." Fed. R. Civ. P. 83(b). Federal law allows litigants to file pretrial dispositive motions. *See* Fed. R. Civ. P. 12(b) (stating that "a party may assert the following defenses by motion . . . failure to state a claim upon which relief can be granted"); Fed R. Civ. P. 12(c) ("After the pleadings are closed— but early enough not to delay trial—a party may move for judgment on the pleadings."). *See generally Weitzner v. Cynosure, Inc.*, 802 F.3d 307, 314 (2d Cir. 2015) (strongly advising "that district courts promptly review their individual rules and practices so as to eliminate the unacceptable risk that litigants will forfeit rights because of observance of rules promulgated by individual judges, especially with regard to rules that are of questionable consistency with the governing provisions of the federal rules and statutes"). Federal law also allows state actors to seek qualified immunity, which is not merely a defense to liability, but also a shield for public officials against the burdens of litigation and trial. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (collecting cases). The district court thwarted both rights, and in the process, in essence evaded our edict that "when faced with a motion based on qualified immunity, a district court can not avoid ruling on the issue." *Summers v. Leis*, 368 F.3d 881, 886 (6th Cir. 2004).[1] I would

---

[1] This did not leave us without jurisdiction however. *See Summers*, 368 F.3d at 887.

reverse the effective denial of qualified immunity because the Complaint fails to state a malicious

prosecution claim against Graham.